(Decided 3rd March 1882.)

GEORGE COBURN, Adm'r of THOMAS COBURN *vs.* JOHN HARRIS.

*Construction of sec. 108, of Art. 93, of the Code—What constitutes a Rejection of a claim by an Administrator within the meaning of that section—Claim not within the meaning of said section—What claims are within the provisions of said section—Administrator.*

By sec. 108, of Art. 93, of the Code, it is provided that " if a claim be exhibited against an administrator, which he shall think it his

Coburn, Adm'r *vs.* Harris.

duty to dispute or reject, he may retain in his hand assets proportioned to the amount of the claim, which assets shall be liable to other claims, or to be delivered up or distributed in case the claim be not established; and if on any claims exhibited and disputed as aforesaid, the creditor or claimant shall not, within nine months after such dispute or rejection, commence a suit for recovery, the creditor shall be forever barred." A claim against an intestate's estate, duly authenticated and passed by the Orphans' Court, was exhibited on or about the 28th of March, 1878, to the intestate's administrator for payment, and was objected to and not paid. Suit for the whole claim was then instituted, and in that suit the plea of *never promised as alleged* was filed on the 3rd of September, 1878. At the trial the right to recover a part of said claim under the pleadings was abandoned, and a new suit for the part so abandoned was brought on the 4th of March, 1880, the claim then sued on being for money payable to the plaintiff for goods bargained and sold to the defendant's intestate in his life-time, and delivered since his death to his administrators. HELD:

1st. That a more formal demand than by suit could not be made, and a rejection of, and refusal to pay, could not be more solemnly made than was made by such pleas as were interposed in the first suit denying the plaintiff's claim *in toto;* and if the statute were applicable to such a claim as the one for which the new suit was brought, the plaintiff was not entitled to recover.

2nd. That the claim, however, was not within the meaning or contemplation of sec. 108, of Art. 93, of the Code.

3rd. That said section refers to such claims against the decedent as imperatively require both authentication and passage by the Orphans' Court before the administrator would be protected in paying.

4th. That where the claim arises, as this claim did, from dealing with the administrator and delivery of the materials to him, and he knows all about it, the creditor need not get his claim proved and passed before the administrator would be justified in paying it.

5th. That in thus dealing with the creditor on behalf of the estate the administrator makes himself liable as such administrator, and he gets his allowance of the claim thus paid, according as the Orphans' Court may be satisfied he has acted fairly in the matter.

6th. That as a matter of practice however, the administrator ought to fortify himself by procuring the creditor's probate.

Coburn, Adm'r *vs.* Harris.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the six following prayers:

1. That if the jury find that the defendant's intestate, the late Thomas Coburn, had a contract with the Cemetery Company for the construction of the Boundary avenue wall referred to in the evidence, and that said Thomas Coburn entered into an agreement with the plaintiff for furnishing all the new stone that would be required in the construction of said wall at $2 per perch, and that said Thomas Coburn died while said wall was being erected, and before its completion, and that his administrators completed said wall in pursuance of the contract made by said Thomas; and shall further find, that said plaintiff, in pursuance of his agreement to furnish all the new stone required for said wall, (should they find such agreement,) furnished stone therefore to said administrators, after the death of said Thomas; and shall further find, that the entire amount due by said company for said wall, including that completed, after the death of said Thomas, as well as that completed at the time of his death was collected by, and paid to said administrators, as assets of the estate of said Thomas, then the plaintiff is entitled to recover for such amount of stone, (not exceeding the quantity claimed in the bill of particulars,) as they may find was so furnished by him to said administrators after the death of said Thomas, unless they find that after having been passed by the Orphans' Court, the claim now sued on was presented to plaintiff, or his attorney, to said administrators for payment, and was by them disputed or rejected, and that the plaintiff failed to commence a suit for the recovery thereon, within nine months thereafter.

2. That on the pleadings and evidence, even if the jury find that the general account, as passed by the Orphans' Court and offered in evidence, on which is the charge for 2153 perches of stone furnished for Boundary avenue wall, was presented for payment after having been passed by the Orphans' Court, and was, as a whole, disputed or rejected, such dispute or rejection of said general account, as a whole was not a dispute or rejection of the claim now sued for; if the jury believe from the evidence that all the stone furnished by plaintiff for Boundary avenue wall, was so furnished under a contract made for the same, separate and distinct from any other stone or material charged for in said general account, and that the claim now sued on was included in the charge of 2153 perches aforesaid, and that said dispute or rejection was because of other claims or charges contained in said general account, and in nowise because of the charge therein for stone furnished Boundary avenue wall.

3. That on the pleadings and evidence, even if the jury find that the claim sued on was disputed or rejected by one of the joint administrators of said Thomas Coburn, such dispute or rejection is not a bar to plaintiff's recovery; if they further find that said claim never was disputed or rejected, but on the contrary, was admitted to be correct by the other administrator.

4. That even though the jury find that the claim now sued on was rejected or disputed on March 28th, 1878, such rejection or dispute is not a bar to recovery in this case; if they further find that on September 3rd, 1878, plaintiff did commence a suit against said administrator for the recovery of the claim now sued on, together with other claims, and that said suit continued pending until sometime in June, 1879, and that during the trial thereof, it was determined by the Court on the objection of defendant that the plaintiff, on the pleadings in that case, could not recover for the claim now sued on, and that the same

was thereupon withdrawn by plaintiff from that suit publicly stated at the time, in the hearing of the defendant and his counsel, with the purpose of bringing another suit thereon, and that an appeal was taken by defendant from the judgment in said suit, and that said appeal involved a question, the determination of which might preclude any recovery on the claim now sued on, and that said appeal was argued January, 1880, and decided March 31st, 1880, and the present suit brought March 4th, 1880.

5. That on the pleadings and evidence, even if the jury should find that the claim sued on was, after authentication, disputed or rejected by defendant, such rejection or dispute does not preclude a recovery, if they further find that the estate of said Thomas Coburn has not been fully administered, and that there are sufficient assets in the hands of the administrator to pay the same.

6. That if the jury find for the plaintiff, then the plaintiff is entitled to recover according to the price agreed upon between him and the said intestate, if the jury find that any price was agreed upon; and should they see proper to do so, under all the circumstances of the case, they are at liberty to allow interest on such amount as they may find the plaintiff entitled to, from the date of the passage of the account offered in evidence by the Orphans' Court of Baltimore City.

And the defendant offered the six following prayers:

1. If the jury find from the evidence, that on or about the 25th day of February, 1878, the plaintiff exhibited in the Orphans' Court of Baltimore City his bill against the estate of Thomas Coburn, authenticated by his oath and that of the witness, William H. Heagy, and offered in evidence in this case, and that the said bill so exhibited and authenticated, was passed by the said Orphans' Court, and that after having been so exhibited, proved and passed, the said bill was presented by William A. Stewart, Esq., as the authorized attorney of the plaintiff, to the defen-

dant, on or about the 28th day of March, 1878, and payment thereof was demanded by said Stewart of the defendant; and if the jury further find, that upon such presentation and demand, the defendant refused to pay said bill, but on the contrary disputed and rejected the same as presented, as testified to by said Stewart; that the claim now sued on for 415 perches of stone, is part and parcel of the item of 2153 perches of stone mentioned in said bill, then the plaintiff is not entitled to recover, even although the jury shall further find, that the defendant did not, in express terms specifically dispute, reject or object to the said item of 2153 perches, or any part thereof.

2. If the jury believe from the evidence, that the claim now sued on, is part and parcel of the item of 2153 perches mentioned in the bill exhibited by the plaintiff against the estate of Thomas Coburn, in the Orphans' Court of Baltimore City, and that at any time prior to the third day of June, 1879, the said bill, including the claim now sued on, as part and parcel of said item of 2153 perches of stone was presented to the defendant by the authorized agent and attorney of the plaintiff, and payment thereof demanded, and that payment of said bill as so presented, was refused by the defendant, and the said bill was disputed or rejected by him, then the plaintiff is not entitled to recover, even although the jury may find that no objection was made by the defendant to the item of said 2153 perches of stone, or any part thereof.

3. That if the jury find from the evidence, that at any time prior to the 4th day of June, 1879, the claim now sued on after being authenticated by the oath of the plaintiff, and passed by the Orphans' Court, was presented for payment to the defendant by the plaintiff, or by some one authorized by him, so to present it, and was disputed and rejected by the defendant, then the plaintiff, upon the pleadings in this case cannot recover, and their verdict must be for the defendant.

4. If the jury find from the evidence, that the claim now sued on, together with other claims of the plaintiff, against the estate of Thomas Coburn, deceased, authenticated by the oath of the plaintiff, was presented by him to the Orphans' Court of Baltimore City, on or about the 25th day of February, 1878, and was passed by said Court and that subsequently the said claim so authenticated and passed, and including the item now sued for as part and parcel of the item of 2153 perches of stone mentioned in said bill, was presented by William A. Stewart, Esq., the authorized attorney of the plaintiff, to the defendant, and payment thereof was demanded on or about the 28th day of March, 1878, and that after such presentation of said claim, payment thereof was refused by the defendant, and that this suit was not brought until the 4th day of March, 1880, then the plaintiff is not entitled to recover, and their verdict must be for the defendant, even although the jury shall further find that after the death of said Thomas Coburn, the plaintiff delivered to the defendant the 415 perches of stone mentioned in the plaintiff's bill of particulars, and although the defendant did not specifically object to, dispute or reject the said item of 2153 perches of stone mentioned in the bill presented by said Stewart to said Coburn, as testified to by said Stewart, or any part thereof; provided, they find that the whole of the claim as presented, was disputed or rejected, as explained by the instruction given by the Court.

5. That there is no evidence that the bill of the plaintiff against the estate of Thomas Coburn, as passed by the Orphans' Court of Baltimore City, on or about the 25th day of February, 1878, ever was admitted to be correct by either John Coburn or George Coburn, administrators of said Thomas Coburn.

6. If the jury find from the evidence, that the claim now sued on, together with other claims of the plaintiff against the administrators of Thomas Coburn, deceased,

authenticated by the oath of the plaintiff, was presented by him to the Orphans' Court of Baltimore City, and passed by said Court, on or about 25th of February, 1878, and that subsequently the said claims, so authenticated and passed, and including the item now sued for, was presented by William A. Stewart, Esq., the authorized attorney of the plaintiff, to the defendant, and payment thereof demanded, on or about the 28th day of March, 1878, and that after such presentation of said claim, payment thereof was refused by the defendant, and that subsequently, in consequence of such refusal of said defendant, to admit and pay said claim, a suit was brought therefor, by the plaintiff, in the Baltimore City Court, on the third day of September, 1878, against George Coburn and John Coburn, then joint administrators of said Thomas Coburn, and that the said defendants in said suit pleaded that they never were indebted as alleged; that they never promised as alleged, and if the jury shall further find that at the trial of said case the plaintiff amended the pleadings, and struck out John Coburn as one of the defendants, and prosecuted the case against George Coburn alone, and that in said case the plaintiff abandoned the item now sued for in this case, then the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant, even although the jury may further find, that after the death of Thomas Coburn, the plaintiff delivered to John Coburn, as one of the administrators of said Thomas Coburn, the stone mentioned in the bill of particulars in this case.

The Court (GAREY, J.) granted the plaintiff's first and sixth prayers, and rejected his second, third, fourth and fifth prayers, and granted the defendant's third, fourth and fifth prayers, and rejected his first, second and sixth prayers, and gave the following instruction of its own:

"The jury is instructed, that a disputed or rejected claim, against an estate of a decedent, under the laws of Mary-

Coburn, Adm'r *vs.* Harris.

land, is a claim, which, having been duly authenticated, has been presented by the creditor, or his duly authorized agent, to the administrator for payment, and has been disputed, and payment refused, so clearly and definitely, that an ordinarily prudent man, under the circumstances of the creditor, would have notice thereby, that he could only be paid by bringing suit, and recovering judgment, against the administrator, upon the said claim."

The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ROBINSON, IRVING and RITCHIE, J.

*John P. Poe,* for the appellant.

The plaintiff's first prayer should have been rejected. It required the jury to find that the *specific claim* sued for had been disputed and rejected, whereas, the rejection of the whole claim, as passed by the Orphans' Court, without a special designation of the item embraced in this suit, was sufficient to entitle the appellant to the benefit of the statute.  *Section* 108, *of Art.* 93, *of the Code.*

The prayer is also bad, because it requires the jury to find that the claim was presented "*to the administrators* for payment, and was *by them* disputed or rejected;" whereas a presentation to the appellant *alone,* as one of the administrators, and the rejection by *him,* was sufficient to let in the bar of the statute.  *Coburn vs. Harris,* 53 *Md.,* 373; *Toller on Ex'rs,* 360; *Watkins vs. State,* 2 *G. & J.,* 226.

The appellant's first, second and sixth prayers should have been granted.  They present the appellant's theory of the case.  The claim, including the item now sued on, was presented, and payment demanded on the 28th of March, 1878.

As presented, it was disputed and rejected at that time. Suit was brought to the September Term, 1878, for the

.whole claim. Again the whole claim was disputed and rejected, and in June, 1879, the item now sued for was abandoned and withdrawn from that action, and this suit was not brought until March 4th, 1880—nearly two years after the first dispute and rejection—eighteen months after the second rejection, and nine months after the claim for the sum now sued for was abandoned in order that a new suit might be brought. Surely this was a sufficient dispute and rejection to entitle the appellant to the benefit of the statute. It is difficult to imagine what more he could have done to demonstrate his rejection of the claim.

The disputing of the bill, as presented, was a disputing of the whole bill, and each and every item of it, and it was accordingly error to refuse the appellant's first prayer.

The disputing by way of plea in the first suit, of the whole claim, as set out in the bill of particulars, was, in like manner a disputing and rejection of each and every item of it; and the second and sixth prayers of the appellant were, for this reason, improperly refused.

The abandonment of the item now sued for, and its withdrawal from the first action did not make it any the less the claim originally attempted to be recovered in that action, nor relieve it from the dispute and rejection which had already taken place, both on the 28th of March, 1878, when the whole claim was presented to the appellant by Mr. Stewart, and on the 3rd of September, 1878, and up to June, 1879, when the whole claim, as set out in the bill of particulars, including the very item now in question, was denied by the pleas of the administrators.

It is apparent, therefore, that the jury were not properly instructed, nor was the law given to them as the appellant was entitled to have it declared.

*William A. Stewart,* and *Albert Ritchie,* for the appellee.

It was the right and duty of the administrators to complete the contract made by the intestate with the Cemetery Company, for the wall, and the one with the appellee for the stone, and appellee has a right to recover against the remaining administrator, as such, for the stone obtained and delivered after the intestate's death, under the contract made in his life-time. *Poe on Pleading,* 329; *Conner vs. Shew,* 3 *M. & W.,* 350; *Wentworth vs. Cock,* 10 *A. & E.,* 42; *Marshall vs. Broadhurst,* 1 *Cr. & Jer.,* 405; *Colliston vs. Lister,* 20 *Beav.,* 356; 2 *Williams on Ex'rs, secs.* 1560, 1627; *Lomax on Ex'rs, sec.* 286; 1 *Pars. on Conts., secs.* 127, 130, 131, *n.* (*r.*); 2 *Pars. on Conts., sec.* 533.

Section 108, of Article 93, is a highly penal statute, and to be strictly construed. *National Bank vs. Speight,* 47 *N. Y.,* 668; *Hardy vs. Ames,* 47 *Barb.,* 415; *Whitmore vs. Foose,* 1 *Denio,* 161; *Hoyt vs. Bonnett,* 50 *N. Y.,* 538; *Elliott vs. Cronk's Adm'r,* 13 *Wend.,* 35; *Broderick vs. Smith,* 3 *Lans.,* 27; *Peterson vs. Ellicott,* 9 *Md.,* 52.

The plaintiff's prayer which was approved by this Court on the first appeal, fully and fairly (if this claim be within section 108,) presented the law.

This claim is not within the operation of section 108. "Exhibited" implies a claim which it is necessary to prove and have passed. The only claims that it is necessary to have passed, are claims "against his decedent," (Article 93, section 83,) that is, claims which are complete at the death of the decedent, or which will become complete by the lapse of time, or happening of some contingency. Authentication is required because the executor is not presumed to have any personal knowledge of the claims, but section 108 does not apply to claims which are only completed by the personal act, and with the full knowledge of the

executor.   The oath required of the creditor is that he "hath not received any part of the money stated to be due, or any security," &c.   *Article 93, sec. 92.*

The executor cannot need the information, or sanction of this oath, in the case of claims which have accrued by his own act, and of which he has full knowledge.   Moreover, this claim is one that did not exist, and could not have been passed at the time of Thomas Coburn's death. Had the administrators failed to complete the wall, this claim never would have arisen.

Section 100, Article 93, shows that the claims subject to dispute or rejection are those which the administrator has "reason to believe that the deceased never owed."   See *Smith vs. Patton,* 9 *Abb. Pr., N. S.,* 205, 208.

It cannot be that an administrator can be allowed to avail of this section to defeat a recovery for materials, which, under the contract of his intestate, he himself has demanded and received and converted into assets, which he proposes to divide among distributees, of which he himself is one.

If this claim be within section 108, it is not barred, because the appellee *did,* within nine months after the alleged rejection, "commence a suit for recovery," viz., September, 3rd, 1878.   That suit remained pending until June, 1879. The bill of particulars shows beyond question that that suit was commenced in part for the recovery of this very claim.

On the objection of the appellant, evidence relating to it was excluded, and the Court held it to be not covered by the issues on the pleadings, but it nevertheless was a suit brought in part for recovery of this claim.   That suit not only complied literally with the statute, but answered its practical purposes.   To hold appellee to the rigid, technical rules of pleading, under this section; to say that, although in perfect good faith he does commence his suit, if any mischance happens, his claim is lost, is to

make this penal law a snare and a trap, and to give it a construction unwarranted by the authorities.

When several distinct claims, arising under separate contracts, happen to be passed in one account, a dispute of one is not a rejection of all. A refusal to pay the entire aggregate, because one disputed claim is embraced in the account, is not a "rejection" of others, which are impliedly or expressly admitted to be correct. The only rejection recognized is one based on the belief that the decedent did not owe the particular claim in question.

Though George Coburn's rejection be taken to include this claim, it was not final and unqualified. He testifies that he refused to pay "*unless the proper corrections were made.*" The rejection must be final, absolute and unqualified. See *Hoyt vs. Bonnett,* 50 *N. Y.,* 538.

In *Elliott vs. Cronk's Adm'rs,* 13 *Wend.,* 35, the administrator refused to pay, on the ground that he had not had time to examine affairs, and did not know whether the claim was just or not; held, not sufficient.

What has been said covers the refusal of appellant's first and second prayers, and the same considerations should have caused the refusal of his third and fourth. In fact, however, under those prayers he got the benefit of having the claim construed, as being within section 108, of his point on the rejection by one administrator, on his point that a refusal to pay the aggregate account was a rejection of this claim, although no mention was made of it at the time, and indeed of every one of his defences.

In respect to the appellant's sixth prayer, there is no evidence that the appellee, at the first trial, "abandoned the item now sued for in this case," to say nothing of its leaving to the jury the legal question of what constitutes an abandonment.

The instruction given by the Court is fully sustained, and is more liberal to appellant than is warranted, by the cases of *Hoyt vs. Bonnett,* and *Elliott vs. Cronk's Adm'rs.*

·· IRVING, J., delivered the opinion of the Court.

This is an action of assumpsit brought by the appellee, against the appellant, in the Baltimore City Court, on the 4th of March, 1880. The declaration in a single count, claims for money payable to plaintiff for goods bargained and sold by the plaintiff to the defendant's intestate, in his life-time, and delivered since his death to George Coburn aforesaid, and John Coburn, administrators of said Thomas Coburn, the said John Coburn having since said delivery been relieved and discharged by the Orphans' Court of Baltimore City, from his office of co-administrator.

` The following bill of particulars of the plaintiff's claim was filed:

Estate of Thomas Coburn, dec'd, (George Coburn, Adm'r,)
        DR. To John Harris.
To 415 perches of stone, furnished for construction
  of wall at Greenmount Cemetery, from the
  date of the death of Thomas Coburn in Sept.,
  1877, to Dec'r 17th, 1877, at $2.00 per perch, $830.00
    Interest from Dec'r 17, 1877.

` The case was defended on plea of non-assumpsit, and that suit was not brought within nine months after the rejection of the claim by administrator, under sec. 108, of Art. 93, of the Code of Public General Laws.

It appears that Thomas Coburn was in his life-time under a contract with Greenmount Cemetery Company to build a certain wall; and that he contracted with the plaintiff to furnish him all the stone he needed for the construction of the wall, at two dollars per perch; and that Thomas Coburn having died without completing the wall, the administrators after his death proceeded to finish the work. This suit is to recover for the stone alleged to have been delivered the administrators, after the death of their intestate, for the completion of the wall.

A judgment has already been obtained in another suit against this appellant for the stone delivered the intestate in his life-time. The bill of particulars in that suit included the stone which is the subject of this action, but under the pleadings in that case, recovery for the stone furnished the administrators after the death of the intestate, was denied; and this suit has been instituted for it. In the other suit the *whole* claim was resisted by plea of *never promised as alleged,* and other pleas not necessary to be referred to for the purposes of this case. The record of that case was offered in evidence in this case, and evidence tending to prove the indebtedness now sued for. It also was in evidence that this claim with others, duly authenticated, and passed by the Orphans' Court, was exhibited, on or about the 28th of March, 1878, to the appellant for payment, by the attorney of the appellee, and was objected to, and was not paid; that the suit already mentioned was then instituted, and that claim or right, to recover the amount now claimed in that suit under its pleadings, was abandoned in Court, on the 12th day of June, 1879. In the former suit the pleas of non-assumpsit were interposed as early as September 3rd, 1878. The pleadings were subsequently amended, and issue was joined on May 30th, 1879. Upon these facts the appellant framed prayers in the present case, invoking the protection of the 108th sec. of Art. 93, of the Code of Public General Laws, because the suit had not been brought within nine months after the exhibition to, and rejection of the claim by him. The Court adopting the theory that sec. 108, of Art. 93, did apply, and barred the suit, if the jury should find the facts enumerated, granted the third and fourth prayers of the appellant, but refused the sixth prayer. This refusal is one of the grounds of error relied on by the appellant. In addition to the facts set out in the fourth prayer, the sixth prayer also contained the following: "and that subsequently a

suit was brought therefor, by the plaintiff in the Baltimore City Court on the third day of September, 1878, against George Coburn and John Coburn, the joint administrators of said Thomas Coburn, and the said defendants in said suit pleaded, that they never were indebted as alleged; and that they never promised as alleged, and if the jury shall further find, that at the trial of said case, the plaintiff amended the pleadings, and struck out John Coburn as one of the defendants, and prosecuted the case against George Coburn alone; and that in said case the plaintiff abandoned the item now sued for in this case, then the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant, even although the jury may further find, that after the death of Thomas Coburn, the plaintiff delivered to John Coburn as one of the administrators of said Thomas Coburn, the stone mentioned in the bill of particulars in this case."

The manifest object of this prayer was to get the Court's instruction as to the effect of the former suit; as a demand of payment on the part of the plaintiff for his claim; and of the defendant's plea of non-assumpsit to the claim made in the declaration, (which included the item now sued for,) that is to say, whether such pleading amounted to a rejection of the claim by the defendant, so as to entitle him to the protection of sec. 108 of Art. 93, as an entire bar, because this suit was not brought within nine months from the defence so made by him to that suit. A more formal demand than by suit could not be made, and a rejection of and refusal to pay could not be more solemnly and formally made than was made by pleas, such as were interposed, denying the plaintiff's claim *in toto;* and if the statute was applicable to such a claim as this is, we think that this prayer of the defendant ought to have been granted. In our opinion, however, the claim sued on in this case is not within the meaning or contem-

Coburn, Adm'r *vs.* Harris.

plation of sec. 108 of Art. 93 of the Code. That section refers to such claims against the decedent as imperatively require both authentication and passage by the Orphans' Court before the administrator would be protected in paying. Such claims as are referred to in secs. 92 and 93 of the same Article are intended by sec. 108, to be barred if the suit is not brought within nine months after exhibition to the administrator and rejection by him. In 53 *Md.,* 367, on an appeal between these same parties, in the suit which resulted in judgment for the plaintiff for that portion of the stone which was delivered in the intestate's life-time, this Court said, with respect to claims upon contracts with the decedent, that to entitle the administrator to plead sec. 108 of Art. 93, in bar, such claim when exhibited to or demanded of the administrator must have been legally authenticated, and also be passed by the Orphans' Court, so that he would be justified in paying it if he had chosen, instead of repudiating and rejecting it. This claim differs, we think, essentially, from the one there passed upon; for although it resulted from a contract with the intestate in his life-time, it was completed with the administrator; and the Court ruled in the former case, on the trial below, that a count charging the contract with the intestate in his life-time would not admit proof, and justify recovery for such of the stone as was delivered after his death to his administrator. The claim now sued for is not within the meaning of the section nor of that decision; nor is it within the contemplation of the decision of *Zollickoffer's Case,* so far as that case refers to this sec. 108. It is without doubt a claim against the estate of the decedent; but it was not a wholly executed contract, so as to be within the contemplation of the law we are discussing. The decedent's contract was supposed to make it the duty of the administrator to complete the wall. The appellee's contract with decedent to furnish the stone, was also supposed to bind the administrator to

take from him the stone necessary to complete the work, and the stone was delivered to the administrator accordingly. The law provided for proof of claims against the deceased, and passage by the Orphans' Court to justify the administrator in paying, because the administrator was supposed to be ignorant of the character of such claims; but where the claim arises on direct contract with the administrator; or, as this claim did, from dealing with the administrator, and delivery of the material to him, and he knows all about it; because he incurred the obligation; or, as in this case, received the stone, the creditor need not get his claim proved and passed, before the administrator would be justified in paying it. In thus dealing with the creditor on behalf of the estate the administrator makes himself liable as such administrator, and he gets his allowance of the claim thus paid, according as the Orphans' Court may be satisfied he has acted fairly in the matter. But as a matter of practice, the administrator ought to fortify himself by procuring the creditor's probate. Whether such claim as this must be presented within any particular time or be barred, is not now before us. The only question is, can the administrator plead the 108th sec. of Art. 93, which this Court said in *Zollickoffer's Case*, (44 *Md.*, 359,) was not intended as bare protection to the executor, or exoneration of him, but operated to forever bar the creditor who was in the default designated in it?

We are clearly of opinion that this claim is not within the reason of the law, and that the section invoked has no application, and could not be pleaded in bar to such claim. Entertaining this view, it follows that the appellant obtained from the Court in the instructions granted him even more than he was entitled to. The pleadings present no question of *plene administravit* or *res adjudicata*. In fact, the appellant's counsel stated he had not made the point below, that the former suit concluded this.

one, and did not claim that it could properly be pressed in this Court. The judgment must be affirmed.

*Affirmed with costs.*

(Decided 3rd March, 1882.)